**STATE of Tennessee, Appellee,**

v.

**Tracy L. BAILEY, a/k/a Tracy Beene, Ervin DeWayne Hughes and Robert Maurice Evans, Appellants.**

Supreme Court of Tennessee, at Knoxville.

Oct. 25, 1993.

Charles W. Burson, Atty. Gen. & Reporter, Jeannie Kaess, Asst. Atty. Gen., Nashville, for appellee.

Rheubin Taylor, Chattanooga, for appellant Bailey.

Richard K. Mabee, Chattanooga, for appellee Hughes.

William Schwall, Chattanooga, for appellee Evans.

## OPINION

O'BRIEN, Justice.

In a joint trial, together with a defendant named James Bradford, the appellants were convicted of first degree murder and each sentenced to life imprisonment in the penitentiary. Bradford's motion for a severance was granted at the close of the evidence.

The Court of Criminal Appeals affirmed the judgment of the trial court against these defendants. An appeal was taken to this Court in which they filed a joint brief urging eight (8) issues for error, which they say requires reversal of the judgment against them.

One of these assertions of error protests that the statement of James Bradford, who did not testify, was admitted through the testimony of an investigating officer in contravention of the decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and thus violated the constitutional right to confront the witnesses against them. We conclude this issue is dispositive of the case and that the judgment of the lower courts must be reversed.

It was the State's theory in this case that the deceased, Dexter Martin, had driven into a public housing project area and had engaged in a conversation with the defendant Bradford about the purchase of some crack cocaine. He had been handed a sample of the cocaine through his pick-up truck window and sped away without paying for the cocaine in his possession. The other defendants were all in the immediate vicinity and were participants in the illicit drug sale. Bradford purportedly shouted "stop that truck" or words to that effect, and the other defendants, in an effort to do so, began shooting at the vehicle as it circled around to leave the housing development area. In his direct examination of Officer Charles Stearns, about Bradford's statement the State's attorney turned to statements of defendants Bailey and Evans, relative to shooting at the truck's tires. He then returned to Bradford and his statement, in which the following exchange took place:

Q (By Mr. Bright) You were telling that Mr. Bradford said that Martin snatched a rock from him?

A Uh-hmm.

Q Did he say anything about the shooting? Did he say anything about how he felt about the shooting? Again, refer to your notes if you would like to refresh your memory.

A The thing I remember him saying is—let me see—

Q Did he express regret over the fact that Mr. Martin was dead?

A Let's see, you're wanting to know if he expressed any—

Q Any regret over what had happened.

A In his statement, he said, "he snatched a rock, but they didn't have to kill him. They didn't have to shoot him," or something like that.

Q Okay. But he said he was unhappy about the death?

A Right.

Q That's fair to say?

A Uh-hmm.

■ This issue is attributed to the defendant Hughes, but we are of the opinion that it applies equally to each of the defendants, other than Bradford. After this exploitation of Bradford's statement by the District Attorney General, Bradford's attorney, on cross-examination of Stearns, reemphasized the impact of this statement on the jury by inquiring of Officer Stearn:

"All right. Now, I want to ask you a question, Detective Stearns, and you had told us earlier in response to Mr. Bright, but—and I don't know if you remember or not, but when Mr. Bradford was sitting there telling you and you were looking at him across the table, I assumed, you can tell us the expression on his face, you can tell us the tone of his voice, you can tell us what he said to you at that time, but isn't it a fact that Mr. Bradford told you that, 'they didn't have to kill him, they didn't have to shoot?' ... And when he told you that, did he tell you that with sincerity?"

■ The State first argues that defendant Hughes did not preserve this issue because he did not comply with the Rules of Criminal Procedure which require a defendant to ask the court to review a statement which may violate *Bruton* before the trial begins. The simple answer to that is that the statements of all of the defendants which appear in this record were redacted beforehand to delete any reference to any particular defendant by name. The State says that the rule in *Bruton* does not apply to the case at hand because the statement Hughes complained about did not name him and so should not be excluded, insisting that a jury could not interpret this statement as suggesting that Hughes was a member of the group that killed the victim.

■ The principle of *Bruton* is that admission of a co-defendant's confession implicating a defendant at a joint trial constitutes prejudicial error even though the trial court may give clear, concise and understandable instructions that confessions could only be used against the co-defendant and must be disregarded with respect to any other defendant. The right of cross-examination is included in the right of an accused in a criminal case to confront witnesses against him. In *Bruton*, Justice Stewart, concurring, made this comment:

I think it clear that the underlying rationale of the Sixth Amendment's confrontation clause precludes reliance upon cautionary instructions when the highly damaging out-of-court statement of a co-defendant, who is not subject to cross-examination is deliberately placed before the jury at a joint trial. A basic premise of the confrontation clause, ... is that certain kinds of hearsay are at once so damaging, so suspect, and yet so difficult to discount, the jurors cannot be trusted to give such evidence the minimal weight it logically deserves, *whatever* instructions the trial judge might give. It is for this very reason that an out-of-court accusation is universally conceded to be constitutionally inadmissible against the accused, rather than admissible for the little it may be worth. (Citations Omitted).

It is an impossibility in a case such as this that the jury could not be influenced by evidence against these co-defendants which,

as a matter of law, they should not consider, but which they cannot put out of their minds. *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), Frankfurter, J., dissenting. It makes little difference that the reference in Bradford's statement to "they didn't have to kill him, they didn't have to shoot him," did not refer to any of the co-defendants in particular where, they all sat side by side at trial in the same courtroom.

Our disposition of this case obviates the necessity of considering the remainder of the issues raised. There is little likelihood of a recurrence in the event of a new trial. It would appear, however, that a severance of one or more of the defendants may be necessary, depending on the nature of the proof to be introduced by the State. Whatever the circumstances, the judgments of the Court of Criminal Appeals and the trial court are reversed and the case is remanded for such further proceedings as may be appropriate. Costs are assessed against the State.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.